```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/24/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NATIONWIDE GENERAL INSURANCE            :
COMPANY, as subrogee of SALIL SETHI AND :
KHUSHPREET KAUR *and* as subrogee of JING :
CHEN AND BO ZHU,                        :
                           Plaintiffs,  :
                                        :
            -against-                   :
                                        :
    RAEL MAINTENANCE CORP.,             :
                           Defendant.   :
---------------------------------------------------------------- X

                                          1:23-cv-4433-GHW;
                                          1:23-cv-4462-GHW;
                                          1:23-cv-5193-GHW;
                                          1:23-cv-8717-GHW


                                          MEMORANDUM OPINION &
                                                   ORDER


----------------------------------------------------------------X
THE CINCINNATI INSURANCE COMPANY,  :
                                        :
                           Plaintiff,   :
            -against-                   :
                                        :
    RAEL MAINTENANCE CORP.,             :
                           Defendant.   :
----------------------------------------------------------------X


----------------------------------------------------------------X
USAA CASUALTY INSURANCE COMPANY, as :
subrogee of JAMES ANDERSON,             :
                           Plaintiff,   :
-against-                               :
                                        :
RAEL MAINTENANCE CORP.,                 :
                           Defendant.   :
----------------------------------------------------------------X


----------------------------------------------------------------X
TRAVELERS EXCESS AND SURPLUS LINES  :
COMPANY a/s/o PARK ROW 23 OWNERS    :
LLC,                                    :
                           Plaintiff,   :
            -against-                   :
                                        :
    RAEL MAINTENANCE CORP.,             :
                           Defendant.   :
----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

In July 2022, a routine test of the fire suppression system in an apartment building went wrong. Water flooded portions of the building, resulting in significant water damage to a number of apartments. Various insurers of the damaged apartments, as subrogees of the apartment owners, filed multiple actions in this District, asserting claims of negligence under New York law against the entity that conducted the fire suppression test. Other insurers—and owners—brought suit in New York state court, also asserting claims of negligence under New York law to recover for damage from the same incident. Defendant now moves to dismiss the federal cases under the *Colorado River* abstention doctrine, to permit the federal cases to be litigated together with the state actions in state court. Because the federal and state cases include substantially the same parties litigating substantially the same issues under New York law, the federal and state cases are parallel proceedings that are best resolved before the state court. Accordingly, the Court finds that abstention is appropriate and GRANTS Defendant's motion to dismiss.

I.    **BACKGROUND**

A.    **Facts[1]**

On or about July 29, 2022, Defendant Rael Maintenance Corp. conducted a fire suppression test by testing the fire pump and sprinkler system at 25 Park Row, New York, NY (the "Building"). *Nationwide General Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-4433-GHW, Dkt. No. 1 ¶ 13 ("Compl.").[2]  The test did not go as planned, resulting in significant flooding throughout the

---

[1] The facts are taken from the *Nationwide* complaint and are substantively identical in all of the related actions in relevant part, unless otherwise noted. The alleged facts are accepted as true for the purposes of this Rule 12(b)(1) motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In ruling upon a Rule 12(b)(1) motion alleging lack of subject matter jurisdiction, the Court must accept as true all well-pleaded assertions of fact in the complaint and resolve doubts and draw all reasonable inferences in favor of the plaintiff. This factual presumption, however, does not attach to jurisdictional allegations." *Arbitron, Inc. v. 3 Cities, Inc.*, 438 F. Supp. 2d 216, 217 (S.D.N.Y. 2006) (citing *SEG Vanguard Gen. Corp. v. Ji*, 195 F. Supp. 2d 564, 566 (S.D.N.Y. 2002)).

[2] Unless otherwise indicated, citations to docket items are to the *Nationwide* case, the first of the federal actions filed.

Building.  *Id.* ¶ 13.  This resulted in "severe and extensive" damage to various apartments in the Building.  *Id.* ¶ 17.  Owners of the units filed insurance claims for the damage with their respective insurers.  *Id.* ¶ 14 ("Plaintiff Nationwide has paid its insureds and others on their behalf[] an amount in excess of Five Hundred Thousand Dollars . . . .").  The insurers—as subrogees of the unit owners—now bring suit to recover the insurance payouts resulting from the flooding.  *Id.*

### B.    Procedural History

Between May 26, 2023 and October 4, 2023, Plaintiffs filed a series of actions in this District to recover for the damage to the apartments resulting from the flooding incident.  *See* Compl.; *The Cincinnati Insurance Co.*, No. 1:23-cv-4462-GHW, Dkt. No. 1; *USAA Casualty Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-5193-GHW, Dkt. No. 1; *Travelers Excess & Surplus Lines Co. a/s/o Park Row 25 Owners LLC v. Rael Maintenance Corp.* ("*Travelers Excess I*"), No. 1:23-cv-8717-GHW, Dkt. No. 1; *Travelers Commercial Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-08498-GHW, Dkt. No. 1; *Berkley Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-08412-GHW, Dkt. No. 1 (collectively, the "Federal Actions").[3]  Certain of the Federal Actions seek recovery for more than one apartment unit in the Building.  *See* Compl. ¶¶ 8–9 (two units); *Cincinnati*, Dkt. No. 1 ¶¶ 6–7 (two units); *Travelers Excess I*, Dkt. No. 14 (four units); *Travelers Commercial*, Dkt. No. 1 ¶ 3 (three units).

---

[3] One additional case was voluntarily dismissed without prejudice for lack of subject matter jurisdiction.  In its letter of voluntary dismissal, Plaintiff conceded that the Court lacked subject matter jurisdiction and represented that it would refile in state court.  *U.S. Underwriters Ins. Co. v. Rael Maintenance Corp.*, No. 1:23-cv-07649-GHW, Dkt. No. 19.

On April 9, 2024, after the motions to dismiss were fully briefed, a new case was filed in this District and flagged as a related action to the Federal Actions.  *See Travelers Excess & Surplus Lines Co. a/s/o Park Row 25 Condominium v. Rael Maintenance Corp.* ("*Travelers Excess II*"), No. 1:24-cv-02680-GHW, Dkt. No. 1.  Plaintiff asserts claims of negligence against Rael Maintenance and additional defendants Rael Automatic Sprinkler Company, Inc., Urban Atelier Group, LLC, Buro Happold Consulting Engineers, P.C., Buro Happold, Inc., CookFox Architects, D.P.C., Parkview Plumbing & Heating, Inc., and RCI Fire Protection LLC.  *Id.* ¶¶ 1–18.  *Travelers Excess II* was assigned to this Court on April 19, 2024.  There is no pending motion to dismiss in this new action, and the plaintiff has not made any representation on whether it intends to dismiss the case if the motions to dismiss are granted.  Therefore, the Court does not consider the *Travelers Excess II* case as part of the Federal Actions at issue in the motions to dismiss.

The Federal Actions are diversity cases.  In each Federal Action, the plaintiff asserts a claim of negligence against Rael Maintenance under New York law.[4]  Compl. ¶ 16.  The Federal Actions are all assigned to this Court.

The Court entered case management orders in each Federal Action, including deadlines for the completion of discovery.  *See e.g.*, Dkt. No. 23.  Discovery is ongoing.[5]  The Court has granted extensions of the discovery deadlines in three of the Federal Actions.  *See Cincinnati*, Dkt. No. 92 (fact discovery by June 5, 2024 and expert discovery by August 5, 2024); *USAA Casualty*, Dkt. No. 81 (same); *Travelers Excess I*, Dkt. No. 77 (same).

Rael Maintenance has also filed a third-party complaint in each Federal Action, impleading a number of third-party defendants allegedly involved in the flooding incident.  Dkt. No. 27 (third-party complaint).  These third-party defendants are:  Board of Managers of 25 Park Row Condominium; Park Row 23 Owners, LLC; Halstead Management Company, LLC; L+M Development Partners, LLC; L&M Builders Group, LLC; Buro Happold Consulting Engineers, P.C.; Buro Happold, Inc.; CookFox Architects, D.P.C.; Urban Atelier Group, LLC; Chatsworth Builders, LLC; RCI Fire Protection, LLC; and Parkview Plumbing & Heating, Inc. (collectively, the "Additional Defendants").[6]  Dkt. No. 27 at 1.  The Additional Defendants include the governing body of the condominium, the management company, and various entities responsible for the

---

[4] There are slight differences in the Federal Actions.  One case names additional Defendants, as explained in further detail in *supra* note 6.  Another case adds a second cause of action, nuisance, under New York law.  *See Cincinnati*, Dkt. No. 1 ¶¶ 22–34.

[5] The deadline for the completion of fact discovery has passed in one action, though expert discovery is ongoing. *Nationwide*, Dkt. No. 23 (setting March 13, 2024 as deadline for fact discovery completion).  As the latest pleading—an answer to a third-party complaint—was only filed on February 29, 2024, two weeks before the deadline for fact discovery, it is not clear that fact discovery among all parties in litigation, in fact, was completed by the Court-approved deadline.

[6] While the Additional Defendants are present in each of the six Federal Actions, there are slight variations. One case names some of the Additional Defendants as Defendants, not third-party defendants.  *Travelers Commercial*, Dkt. No. 1 (complaint).  The same case also names a Rael affiliate, Rael Auto-Matic Sprinkler Company Inc., as a Defendant.  *Id.* ¶ 6 (noting the two entities are "associated with and/or related to one another").  Plaintiff in another case seeks to amend the complaint to name certain of the Additional Defendants as Defendants.  *See Travelers Excess I*, Dkt. No. 99 (proposed stipulation to amend).  Two additional entities, WSP USA Buildings, Inc. and WSP USA, Inc., were named as Defendants in the earliest Federal Actions but were voluntarily dismissed.  *Nationwide*, Dkt. No. 60.

construction and design of the Building. *Id.* ¶¶ 23–75. Rael Maintenance seeks contribution and indemnification from the Additional Defendants for any liability found against Rael Maintenance as a result of Plaintiffs' claims. *Id.* ¶¶ 76–147. The Additional Defendants, in turn, have asserted crossclaims and counterclaims against each other and Rael Maintenance. *See, e.g.*, Dkt. Nos. 42, 72, 75, 87, 98, 99 (answers by the Additional Defendants).

### C.    State Cases[7]

Between July 11, 2023 and September 18, 2023, five suits were filed in New York Supreme Court arising out of the same flooding incident (the "State Actions"). Dkt. No. 28-7 (copies of the summons and complaints in the State Actions). Some of the State Actions, like the Federal Actions, relate to multiple units in the Building. *See, e.g.*, Dkt. No. 28-7 at ECF pp. 30–31 (six units); *id.* at ECF pp. 47–50 (seven units). As with the Federal Actions, plaintiffs in the State Actions seek to recover for the water damage to individual units in the Building pursuant to New York law under a theory of negligence.[8] *Id.* at ECF pp. 5, 9, 16–18, 25–27, 32–33.[9]

On November 8, 2023, the State Actions were consolidated in the New York Supreme Court for New York County under the caption *Yeuru Yan v. Rael Maintenance Corp.* (the "Consolidated State Action"), Index No. 653323/2023. Dkt. No. 55-8 (state court order granting motion for consolidation); *see also* Dkt. No. 28-9 ¶ 12 (arguing in support of motion to consolidate that, "[s]ince all actions involve the same water loss, overwhelmingly by the same parties, and presumably the same cause and origin, all [State] Actions should be consolidated to avoid a multiplicity of suits, unnecessary costs, confusion, and inconsistent adjudications"). Discovery is

---

[7] The Court's knowledge of the New York Supreme Court cases is based on the parties' submissions in connection with the Motions to Dismiss. Therefore, this summary may not reflect the latest or most accurate information, such as the total number of related state court cases.

[8] At least a significant portion of the complaint in at least one State Action appears to be identical to a complaint in a Federal Action, even reflecting the same typographical error in both complaints. *Compare* Compl. at 3–4, *with* Dkt. No. 28-7, ECF p. 26 (complaint of *Executive Risk Indemnity, Inc. v. Rael Maintenance Corp.*).

[9] One State Action was brought by the unit owners themselves. *See* Dkt. No. 28-3 ECF p. 10.

ongoing in the Consolidated State Action.  The plaintiffs and the defendants have served discovery

demands and deposition notices, and they have responded to discovery demands.  *See, e.g.*, Dkt. No.

28-10 at ECF pp. 2–14, 39–68, 90–115 (copies of discovery demands and notices of deposition);

Dkt. No. 28-11 at 7–8 (copies of discovery responses).

### D.    Motions to Dismiss

On October 31, 2023, Rael Maintenance moved under Federal Rule of Civil Procedure

12(b)(1) for the Court to abstain under the *Colorado River* doctrine in four of the Federal Actions.

*Nationwide*, Dkt. No. 28; *see Cincinnati*, Dkt. No. 49; *USAA Casualty*, Dkt. No. 52; *Travelers Excess I*,

Dkt. No. 47 (the "Motions to Dismiss").[10]  Rael Maintenance asserts that the Federal Actions are

parallel proceedings to the State Actions, and that abstention is appropriate under the six-factor

*Colorado River* abstention analysis.  Plaintiffs filed their oppositions in late November 2023, disputing

that the state and federal cases are parallel proceedings and that exceptional circumstances

warranting abstention exist.  *Nationwide*, Dkt. No. 56 (November 17, 2023); *Cincinnati*, Dkt. No. 48

(November 21, 2023); *USAA Casualty*, Dkt. No. 49 (November 20, 2023); *Travelers Excess I*, Dkt.

No. 45 (November 21, 2023).  Rael Maintenance filed replies later that same month.  *Nationwide*,

Dkt. No. 58 (November 22, 2023); *Cincinnati*, Dkt. No. 49-1 (November 28, 2023); *USAA Casualty*,

Dkt. No. 22 (November 27, 2023); *Travelers Excess I*, Dkt. No. 47-1 (November 28, 2023).

## II.    LEGAL STANDARD

Rule 12(b)(1) permits a challenge to a federal court's subject matter jurisdiction.  Fed. R. Civ.

P. 12(b)(1); *see also* Fed. R. Civ. P. 12(h)(3) (requiring dismissal if the court determines at any time

that it lacks subject matter jurisdiction).  The plaintiff, as the party "asserting subject matter

jurisdiction[,] has the burden of proving by a preponderance of the evidence that it exists."  *Morrison*

---

[10] No motions to dismiss were filed in *Travelers Commercial Insurance Co.* or in *Berkley Insurance Co.*  Plaintiffs in both cases represented at the initial pretrial conference in each matter that they will voluntarily dismiss their cases if the Motions to Dismiss are granted.

*v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject

matter jurisdiction, "the court may resolve the disputed jurisdictional fact issues by referring to

evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*,

547 F.3d at 170.  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the

court accepts all material factual allegations in the complaint as true "unless contradicted by more

specific allegations or documentary evidence."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d

140, 145 (2d Cir. 2011).

## III.   DISCUSSION

"[F]ederal courts have a 'virtually unflagging obligation' to exercise their jurisdiction."

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012)

(quoting *Colorado River*, 424 U.S. at 817).  Thus, abstention "is the exception, not the rule."  *Id.*

(quoting *Colorado River*, 424 U.S. at 813–14).  Still, in "exceptional circumstances" where "parallel

state-court litigation could result in 'comprehensive disposition of litigation' and abstention would

conserve judicial resources," federal courts may abstain from exercising their jurisdiction.  *Id.*

(quoting *Colorado River*, 424 U.S. at 813, 817–18).  Because the Federal Actions and the State Actions

are parallel proceedings and carry a significant risk of piecemeal litigation involving serious questions

of state law, the Court finds that abstention is appropriate.

### A.  "Parallel" Proceedings

In determining whether abstention is appropriate, the Court must "make a threshold

determination 'that the concurrent proceedings are parallel.'"  *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d

Cir. 2022) (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  "The mere fact of

concurrent state and federal proceedings 'does not, without more, warrant staying exercise of federal

jurisdiction.'" *All. of Am. Ins. v. Cuomo*, 854 F.2d 591, 602 (2d Cir. 1988) (quoting *Colorado River*, 424

U.S. at 816). Suits are parallel when "substantially the same parties are contemporaneously litigating

substantially the same issue in another forum." *Mochary*, 42 F.4th at 85 (quoting *Dittmer*, 146 F.3d at

118); *see also Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997) ("Federal and state

proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are

essentially the same . . . ."). "To be parallel, federal and state suits need not be identical in every

aspect." *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 29 (S.D.N.Y. 2022)

(quotations omitted).[11]

The State and Federal Actions are parallel proceedings because "[t]he facts underlying the

[concurrent] proceedings here are identical, as are the issues to be litigated." *See Allstate Ins. Co. v.

Rego Park Holdings, LLC,* No. 10 Civ. 3332 (BMC), 2010 WL 11623028, at *2 (E.D.N.Y. Oct. 15,

2010). The State and Federal Actions are negligence actions under New York law seeking to recover

for damage to apartment units sustained from the same incident. While some of the cases assert

additional tort claims, *see, e.g.*, *Cincinnati*, Dkt. No. 1 ¶¶ 22–34 (nuisance cause of action), this is not a

material distinction. "The fact that precisely the same claims are not made . . . does not mean the

actions are not duplicative or parallel. What matters is that the claims concern the same events, and

involve sufficient overlap of subject matter." *Bernstein v. Hosiery Mfg. Corp. of Morganton*, 850 F. Supp.

176, 184 (E.D.N.Y. 1994) (quotations and citations omitted); *see also Telesco v. Telesco Fuel & Masons'

Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) (finding "the federal and state actions are essentially

the same" despite new legal theory and claim in federal action because "in its essential elements the

same cause of action, regardless of theory or pleadings, is asserted in both courts"). In short, the

State and Federal Actions all raise the same "crucial threshold issue": Who, if anyone, was negligent

---

[11] Older decisions in this Circuit sometimes engaged in this analysis as a part of examining the third factor of the *Colorado River* doctrine: the danger of piecemeal litigation. *See, e.g.*, *Garcia v. Tamir*, No. 99 Civ. 0298 (LAP), 1999 WL 587902, at *5 (S.D.N.Y. Aug. 4, 1999).

and therefore liable for the damage arising out of the July 2022 flooding incident.  *See Highview Props.*, 606 F. Supp. 3d at 30; *see also De Cisneros v. Younger*, 871 F.2d 305, 306–07 (2d 1989) ("Although the precise legal theories vary, each of the state action—like their federal counterpart—seeks to determine liability and assess damages for the [subject] fire. . . .").

The parties in the State and Federal Actions are also "substantially the same."  *See Mochary*, 42 F.4th at 85.  "[P]arallelism does not require an exact identity of parties," as long as "the interests of the parties in each case are congruent."  *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 298 (S.D.N.Y. 2017).  The plaintiffs in the State and Federal Actions are owners of the damaged apartment units in the Building, or insurers of the units standing in the place of the owners.[12] Defendants—most notably Rael Maintenance, a defendant in every Federal Action and in the Consolidated State Action—are various entities allegedly responsible for the July 2022 fire suppression test and flooding.  While some of the defendants in the State and Federal Actions are impleaded as third-party defendants rather than directly named as defendants,[13] the central issue remains which entity—or entities—is ultimately liable for Plaintiffs' damages sustained from the July 22 incident.  *See, e.g., De Cisneros*, 871 F.2d at 306–07 (finding abstention was appropriate despite presence of impleaded third-party defendants, where at least one was not present in state proceeding, in negligence actions seeking recovery for damage from apartment fire).  The "interests of the parties in each case," therefore, "are congruent."  *See Phillips*, 252 F. Supp. 3d at 298.

---

[12] The Second Circuit found that *Colorado River* abstention was appropriate in a situation very similar to that before the Court:  There, different plaintiffs filed dozens of suits in federal and state court seeking to recover for damages resulting from a single incident.  *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 207–08, 212 (2d Cir. 1985).  Courts have also found no substantive difference between the property owners and their insurers as subrogees in this context.  *See, e.g., Rego Park Holdings, LLC*, 2010 WL 11623028, at *2 ("[T]he parties here are substantially the same even if the insurance company and the insured are not involved in each other's suits; . . . the two proceedings are . . . essentially identical negligence actions as far as the papers show.").

[13] The Additional Defendants, in addition to Rael Maintenance, are in every Federal Action.  Rael Maintenance represents that the Additional Defendants have been or will be brought into all of the State and Federal Actions "so that every Defendant/Third-Party Defendant is the same in every action, federal and state."  *Nationwide*, Dkt. No. 58 ECF p. 6.

In short, the gravamen of the State and Federal Actions is virtually identical, centering on the

liability under New York law for the flooding damage resulting from the July 2022 flooding incident.

*See Mouchantaf v. Int'l Modeling & Talent Ass'n*, 368 F. Supp. 2d 303, 306 (S.D.N.Y. 2005) ("The

gravamen of the two actions is virtually identical. . . .  While the [state] action involves additional

defendants not parties here, that fact does not render the proceedings non-parallel.  The fact that

[plaintiff] asserts an additional claim . . . likewise does not distinguish the actions for purposes of

*Colorado River*." (citation omitted)); *see also Lawrence Moskowitz CLU. Ltd. v. ALP, Inc.* ("*Lawrence

Moskowitz I*"), No. 19 Civ. 3868 (ER), 2020 WL 1503558, at \*6 (S.D.N.Y. Mar. 30, 2020) (finding

that proceedings were parallel where "the suits are near-mirror images of each other"), *aff'd sub nom.

Lawrence Moskowitz CLU Ltd. v. ALP, Inc.* ("*Lawrence Moskowitz II*"), 830 F. App'x 50 (2d Cir. 2020).

Because the State and Federal Actions include "substantially the same parties . . . contemporaneously

litigating substantially the same issue" in different forums, *see Mochary*, 42 F.4th at 85, they are

parallel proceedings for the purposes of the *Colorado River* abstention analysis.

### B. *Colorado River* Factors

After examining the six factors necessary to determine whether abstention is warranted, the

Court finds that "exceptional circumstances" warranting abstention exist here.  *Colorado River*, 424

U.S. at 813.  The six *Colorado River* factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed
> jurisdiction; (2) whether the federal forum is less inconvenient than the other for the
> parties; (3) whether staying or dismissing the federal action will avoid piecemeal
> litigation; (4) the order in which the actions were filed, and whether proceedings have
> advanced more in one forum than in the other; (5) whether federal law provides the
> rule of decision; and (6) whether the state procedures are adequate to protect the
> plaintiff's federal rights.

*Mochary*, 42 F.4th at 85.  "No one factor is necessarily determinative; a carefully considered judgment

taking into account both the obligation to exercise jurisdiction and the combination of factors

counselling against that exercise is required."  *Colorado River*, 424 U.S. at 818–19.  The test "does not

rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "Where a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk*, 673 F.3d at 101 (quoting *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.,* 239 F.3d 517, 522 (2d Cir. 2001)).

Here, despite the heavy presumption in favor of retaining federal jurisdiction, the *Colorado River* factors weigh in favor of the Court's abstention from the Federal Actions, given that there is substantial danger of piecemeal litigation involving questions of state and local law.

(1)     **Factor 1:  Controversy Involving a Res**

The parties do not dispute that none of the State or Federal Actions involve a controversy over a *res*.  Because this factor is neutral, it weighs against abstention.  *See Niagara Mohawk*, 673 F.3d at 101 (neutral factors favor retaining federal jurisdiction).

(2)     **Factor 2:  Relative Convenience of the Forums**

It is also undisputed that the New York federal and state courts are equally convenient.  *See Arkwright,* 762 F.2d at 210 (finding this factor neutral because "the state and federal courthouses in New York City are next-door neighbors").  As this factor is neutral, it weighs against abstention.

(3)     **Factor 3:  Avoidance of Piecemeal Litigation**

The third factor, the danger and avoidance of piecemeal litigation, weighs strongly in favor of abstention.  There is a significant danger of piecemeal litigation if the Federal Actions proceed separately from the State Actions, as the state and federal issues are "inextricably linked."  *De Cisneros*, 871 F.2d at 308.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."  *Westmarc Commc'ns, Inc. v. Conn. Dep't of Pub. Util. Control*, 807 F. Supp. 876, 883 (D. Conn. 1990) (citing *LaDuke v. Burlington N. R.R. Co.*, 879

11

F.2d 1556, 1560 (7th Cir. 1989)).  "The central problem with piecemeal adjudication . . . is that a potential exists for inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 308.  In such a case, piecemeal litigation "could burden the parties for years to come." *Arkwright*, 762 F.2d at 211.  Further, "'the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first . . . [which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum.'" *Id.* (quoting *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545 (1983)).

"The desirability of avoiding piecemeal litigation was the most significant factor favoring abstention in *Colorado River*." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656 (S.D.N.Y. 1997).  As a result, this factor can be the "paramount" consideration in weighing the *Colorado River* factors.  *See, e.g.*, *Arkwright*, 762 F.2d at 211 ("As in *Colorado River,* the danger of piecemeal litigation is the paramount consideration in this case."); *De Cisneros*, 871 F.2d at 307–08 (affirming abstention where "[t]he basis of the district court's decision to abstain [was] the third factor"); *Lawrence Moskowitz II*, 830 F. App'x at 53 ("[A]voiding piecemeal litigation may be the paramount consideration under certain circumstances. . . . The district court acted well within the bounds of its discretion in weigh[]ing the danger of piecemeal litigation factor more strongly than others.").

Notably, as Rael Maintenance points out, the Second Circuit has held that abstention was appropriate in a situation remarkably similar to this one:  There, dozens of plaintiffs filed suit in federal and state court to recover for the damage resulting from a three-day electric power blackout in New York City caused by a burst water main.  *Arkwright*, 762 F.2d at 207–08.  The federal actions were actions brought by insurers as subrogees, who asserted negligence claims against New York City and other entities to recover for their insurance payouts to businesses harmed by the power outage.  *Id.*  In the meantime, the parallel state actions were assigned a single state judge for the

purpose of supervising discovery, prompting the Second Circuit to note that "it appears likely that the numerous claims arising out of the blackout will be consolidated for all purposes, including discovery and joint trial, in a single state-court action." *Id.* at 211. Relying heavily on the third *Colorado River* factor, the Second Circuit then reasoned:

> As the suits all arise out of the single water main failure, they should be tried in one forum. Maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort. Plainly, avoidance of piecemeal litigation is best served by leaving these suits in the state court.

*Id.* at 211.

As in *Arkwright*, the State and Federal Actions are suits arising out of the same event—the July 2022 flooding incident. Plaintiffs all seek to recover for damage arising from the flooding, and they seek to determine who—among the many Defendant entities in the various actions—is liable under New York law. The same dangers that the Second Circuit emphasized in *Arkwright* are present here: a race to the finish line to obtain a determination on the merits in one forum, inconsistent results that might burden the parties for many years, and a waste of judicial resources and duplicative effort by the parties. *See id.*

Notably, it would significantly serve the interests of judicial economy and efficiency if all negligence actions seeking recovery for damage to individual units in the Building arising out of the July 2022 flooding incident were resolved by a single fact-finder. Here, the single fact-finder can only be the state court. The Court has jurisdiction over the Federal Actions solely based on diversity jurisdiction, and some of the State Actions could not be resolved by this Court, as they appear to lack complete diversity. *See, e.g.*, Dkt. No. 28-7 at ECF pp. 47–50 (State Action complaint naming multiple plaintiffs and defendants who are based in New York). The New York Supreme Court, as a court of general jurisdiction, can hear and resolve all of the parties' claims.

Plaintiffs argue that this case is akin to *Prosperity Realty, Inc. v. Haco-Canon*, in which another court in this District found that, where multiple suits arose from fire damage to a building, the danger of piecemeal litigation did not warrant abstention.  *Prosperity Realty, Inc. v. Haco-Canon*, 724 F. Supp. 254, 257 (S.D.N.Y. 1989).  But this case is distinguishable.  The court in *Prosperity Realty* relied on the fact that the state and federal cases in question only had a small number of claims and parties.  *Id.* ("The number of claims and parties in [*Arkwright*] was significantly greater than here, making piecemeal litigation a much graver threat. . . .").  Where *Prosperity Realty* involved six actions in total, at least double that number—and possibly more in the state court—have been filed in relation to the July 2022 flooding incident.  Many of the State and Federal Actions also assert claims on behalf of multiple units in the Building, against at least a dozen defendants/third-party defendants.

Accordingly, the third *Colorado River* factor weighs heavily in favor of abstention.[14]

### (4)   Factor 4:  Order and Progress of State and Federal Actions

The fourth *Colorado River* factor is neutral and therefore weighs against abstention.  Here, the first case to be filed was a Federal Action.  "[A]nd were the test a race to the courthouse, this factor would favor abstention.  But the inquiry is not so simplistic; the relative progress of the federal and state proceedings must be carefully examined."  *De Cisneros*, 871 F.2d at 308.  The State and Federal Actions were filed in close proximity to each other, in the same general timeframe:  All of the State Actions were filed between July and September 2023, and all of the Federal Actions were filed between May and October 2023.

Based on the record available to the Court, the Court cannot conclude that either set of proceedings has advanced more significantly in one forum than in the other.  In *De Cisneros*, the

---

[14] The Court is not aware of any case law pointing to the comparative numbers of actions pending in federal or state court as material to the *Colorado River* analysis.  In any case, the balance does not tip heavily in favor of one set of proceedings over another here; there are approximately equal numbers of cases (and individual units implicated) in the Federal Actions as in the State Actions.

Second Circuit held that abstention was appropriate where "[b]oth the state and federal actions are still in the discovery stage; no decision on the merits of any issue has yet been rendered in either forum." *Id.*  Indeed, even though "more discovery ha[d] occurred to date in the federal suit," with the district court having been "closely involved in the discovery process, imposing deadlines and holding conferences," the Second Circuit deferred to the district court's "perspective and proximity to the pending litigation" and "accept[ed] its assessment respecting the progress of discovery" in the state and federal actions.  *Id.*

Here, too, both the State and Federal Actions are still in the discovery stage, with no decision on the merits of any issue yet decided in either set of proceedings.  Discovery is ongoing, pursuant to the case management plan and scheduling order the Court issued in each Federal Action.[15]  *See, e.g.*, *Nationwide*, Dkt. No. 23 (case management plan); *Cincinnati*, Dkt. No. 92 (extension of discovery deadlines).  The parties have submitted copies of discovery demands, notices of deposition, and responses to discovery demands in the State Actions, indicating that discovery is also actively ongoing in the Consolidated State Action.  *See, e.g.*, Dkt. No. 28-10 at ECF pp. 2–14, 39–68, 90–115; Dkt. No. 28-11 at 7–8.

Because there is no substantial difference in the order in which the State and Federal Actions were filed and neither set of proceedings is significantly more advanced than the other, the fourth *Colorado River* factor is neutral and therefore weighs against abstention.

---

[15] Notably, the presence of third-party defendants—and cross-claims and counterclaims among the various Defendants and third-party defendants—in each of the Federal Actions has resulted in extended pleading practice:  The most recent pleadings in the Federal Actions were filed as recently as April 24, 2024.  *See, e.g.*, *Nationwide*, Dkt. No. 101 (April 24, 2024); *Travelers Commercial*, Dkt. No. 139 (April 24, 2024); *USAA Casualty*, Dkt. No. 105 (April 24, 2024); *see also Travelers Excess I*, Dkt. No. 100 (April 23, 2024); *Cincinnati*, Dkt. No. 98 (April 3, 2024); *Berkley*, Dkt. No. 78 (April 3, 2024).  As reflected in correspondence among counsel for parties in the Federal Actions, this also appears to have resulted in delays in making substantial progress in discovery in the Federal Actions.  *See, e.g.*, Dkt. No. 58-4 ECF pp. 2–8 ("I believe I speak for all the third-party defendants that we have not been served, appeared in the actions or received a single piece of paper in discovery.  I don't know how we can be in a position to appear and conduct these depositions in 30 days.").  This suggests the Federal Actions may still be at a relatively early stage.

(5)    **Factor 5:  Source of Governing Law**

The fifth *Colorado River* factor weighs in favor of abstention.  The only claims asserted in the State and Federal Actions arise under New York state law.  "Although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where 'the bulk of the litigation would necessarily revolve around the state-law . . . rights of [numerous] . . . parties.'" *De Cisneros*, 871 F.2d at 309 (alterations in original) (quoting *Gen. Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 82 (2d Cir. 1988)); *see also Eagle Ins. Co.*, 961 F. Supp. at 659 ("Given the absence of a federal question in this action, which involves only state law issues, the source of law factor favors abstention."); *Bernstein*, 850 F. Supp. at 185 ("All of the issues are governed exclusively by state law, and therefore the fifth factor . . . weighs in favor of abstention.").

"As all diversity suits raise issues of state law, their presence does not weigh heavily in favor of surrender of jurisdiction." *Arkwright*, 762 F.2d at 211.  But if the state law claims are ones that "raise[] serious questions of state law," such as a novel issue or "the construction of state and municipal building, safety, and fire codes," then the state law claims weigh more heavily in favor of abstention.  *Id.* (noting that cases arising out of a power outage were not mere "'garden variety' federal diversity case[s] applying well-settled state-law principles" (quoting *Giardina v. Fontana*, 733 F.2d 1047, 1051 (2d Cir. 1984))); *accord Niagara Mohawk*, 673 F.3d at 102 ("[T]he *absence* of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." (emphasis in original) (quotations omitted)).

The State and Federal Actions are not "garden variety" diversity cases, as they "raise[] serious questions of state law." *See Arkwright*, 762 F.2d at 211.  As in *Arkwright*, determining liability in the State and Federal Actions will likely require the review and interpretation of various local regulations, including the New York State or City building and fire-safety codes.  The *Nationwide* complaint, for example, alleges that Rael Maintenance was negligent in part by "[f]ailing to comply

16

with applicable laws, statutes, codes, standards, regulation[s], ordinances and/or industry customs related to the work performed at the [Building] . . . ."  Compl. ¶ 16(f).  The State Action *Yueru Yan v. Rael Maintenance Corp.*[16] also alleges that the water damage to the Building was caused by "an improperly conducted fire pump inspection test, and a defectively designed and installed drain system," and cites to local regulations.  Dkt. No. 28-7, ECF pp. 47, 67–68 (summarizing requirements under "[t]he Fire Code, . . . [t]he New York City Building Code, the New York City Mechanical Code and/or New York City Plumbing Code"); *see also id.* pp. 82 (cause of action asserting defendants were obligated to comply with New York City regulations but failed to do so).  *See generally* N.Y. Comp. Codes R. & Regs. tit. 19 § 1225.2 ("[T]he construction, extension, repair, alteration or removal of fire-suppression and alarm systems, shall comply with the provisions and requirements of the 2020 Fire Code of New York State.").  Given this, "if either forum is in a better position to sort out the issues presented by this case, it is the state court, as the case involves exclusively questions of local law." *Arkwright*, 762 F.2d at 211.

Accordingly, the fifth *Colorado River* factor weighs in favor of abstention.

### (6)     Factor 6:  Adequacy of State Court to Protect Plaintiffs' Rights

The sixth *Colorado River* factor weighs in favor of abstention, as the state court is adequate to protect Plaintiffs' rights.  This factor looks to whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses*, 460 U.S. at 28.  This assumption can be rebutted, such as when the parallel state court proceedings have stalled for years.  *See, e.g.*, *Niagara Mohawk*, 673 F.3d at 103 (finding abstention was not warranted in part given the "languishing" of state action with "no prospect of a complete and prompt resolution"); *Rego Park Holdings, LLC,* 2010 WL 11623028, at *3 (finding sixth factor

---

[16] The State Actions are consolidated under the caption of this complaint, *Yueru Yan v. Rael Maintenance Corp.*  *See* Dkt. No. 55-8 (consolidation order).

weighed in favor of abstention given "no evidence of the slow pace of the state court proceeding" and "the state court [appeared] to be making steady progress").

The Court has no reason to doubt that the New York Supreme Court will provide "a fair alternative forum that is capable of resolving . . . the issues." *Niagara Mohawk,* 673 F.3d at 103. While Plaintiffs argue that "the New York state court system is fraught with delays and federal court provides for a more expeditious means of adjudication," *see, e.g.*, Dkt. No. 56 at 11, they do not dispute that New York courts provide the necessary procedural rights to protect Plaintiffs' rights.[17] *See Rego Park Holdings, LLC,* 2010 WL 11623028, at *3 ("The sixth factor pushes slightly for abstention because [plaintiff's] rights will be adequately protected in state court . . . . Plaintiff does not dispute that the New York Civil Practice Law and Rules provide it with the necessary procedure for intervening in the related state action.").

In fact, the limited record before the Court demonstrates the opposite is true for the State Actions: Unlike in *Niagara Mohawk,* where a motion to consolidate had been pending in state court for over three years, *see Niagara Mohawk,* 673 F.3d at 103, the New York Supreme Court granted a motion to consolidate the State Actions less than a month after the motion was filed. *See* Dkt. No. 58-7 at ECF p. 2 (order of consolidation dated November 8, 2023, where "motion date" is October

---

[17] Plaintiffs also argue that their right to expert depositions will be curtailed in state court because "the state court does not provide a procedural method of discovery for expert discovery." *See, e.g.*, Dkt. No. 56, ECF p. 15. To the contrary, New York does permit expert discovery: "Upon request, each party shall identify each person whom the party expects to call as an expert witness at trial and shall disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert's opinion. N.Y. C.P.L.R. § 3101(d)(1)(i); *see also id.* § 3101(d)(1)(iii) (providing that further expert testimony disclosures may be obtained by court order "upon a showing of special circumstances"). Plaintiffs fail to show how New York's procedural rules fail to adequately protect their rights. To the extent that Plaintiffs object based on the existence of differences between state and federal rules, courts have noted that the existence of procedural differences does not, by itself, "deny Plaintiffs their day in court." *See, e.g., Anwar v. Fairfield Greenwich Ltd.*, 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) (noting, in the context of a *forum non conveniens* and forum selection clause dismissal, that "[t]he Court is not persuaded that any of these differences [between U.S. federal and Singaporean courts], conclusorily presented and inevitable between different jurisdictions, would deny Plaintiffs their day in court"); *see also Marentette v. City of Canandaigua*, 351 F. Supp. 3d 410, 423 (W.D.N.Y. 2019) ("[I]t is well-established in this Circuit that the different standard of proof between [an] Article 78 proceeding and [a] federal action does not preclude the application of collateral estoppel." (alterations in original) (quotations omitted)), *appeal dismissed*, 799 F. App'x 48 (2d Cir. 2020) (summary order).

11, 2023).  *Cf. Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999) (finding abuse of discretion where the district court abstained from jurisdiction even though it "was well aware of the slow pace of the state court proceeding").

Accordingly, the sixth factor weighs in favor of abstention.  This factor, however, "is more important when it weighs in favor of federal jurisdiction."  *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986).

### C.  Balancing the Factors

While three *Colorado River* factors weigh in favor of abstention and three factors weigh against, the *Colorado River* abstention analysis "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case . . . ."  *Moses*, 460 U.S. at 16. Here, after a careful consideration of the *Colorado River* factors, the Court concludes that abstention is appropriate.  *See, e.g.*, *Lawrence Moskowitz I*, 2020 WL 1503558, at *9 ("In sum, while the Court finds that three factors weigh in favor of abstention, and three against, an appropriate balance of the factors suggests that *Colorado River* abstention is warranted here.").

The desire to avoid piecemeal litigation weighs particularly heavily in favor of abstention here.  As already noted, this factor is often a paramount consideration, especially where—as here— substantively the same parties are litigating the same issues of state law arising out of the same event, and parallel litigation could give rise to inconsistent results.  *See Arkwright*, 762 F.2d at 211; *De Cisneros*, 871 F.2d at 309 (affirming abstention where eight suits relating to same fire underlying federal suit were pending in state court and only state law negligence issues were in play); *Lawrence Moskowitz II*, 830 Fed. App'x at 52–53 (affirming abstention where the "district court determined the danger of piecemeal litigation was very strong and arguably the key factor"); *Eagle Ins. Co.*, 961 F. Supp. at 656–57 (abstaining where the federal action and related state actions arose out of a single event—a fire at the insured premises—and all involved the same issue of the cancellation of an

19

insurance policy).  This is even more appropriate where the related actions are not only governed purely by state law claims, but likely implicates issues of state and local law affecting numerous parties and claims, as is the case here.  *See Arkwright*, 762 F.2d at 211.  These factors—the desire to avoid piecemeal litigation and the existence of issues of state and local law that affect numerous parties and claims—substantially outweigh the other four factors, as applied to the circumstances here.  *See, e.g.*, *Lawrence Moskowitz I*, 2020 WL 1503558, at *9.

Accordingly, the Court finds that there are "exceptional circumstances" here where "prudent administration of judicial resources and comprehensive disposition of litigation counsels a federal court . . . to abstain from exercising its jurisdiction."  *Arkwright*, 762 F.2d at 212.  The Court abstains from exercising jurisdiction over the Federal Actions, and Plaintiffs' claims are dismissed without prejudice.[18]  *See Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("[D]ismissals for lack of subject matter jurisdiction 'must be without prejudice, rather than with prejudice.'" (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016)).

## IV.   CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are GRANTED and Plaintiffs' claims are dismissed without prejudice.

The Clerk of Court is directed to terminate the following motions:

- *Nationwide General Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-04433-GHW, Dkt. No. 28

---

[18] Rael Maintenance seeks to dismiss the Federal Actions, and no party has asked the Court to consider staying the Federal Actions.  In any case, "[the Supreme Court] has rejected any distinction between a stay of federal litigation and an outright dismissal for the purposes of the [*Colorado River*] exceptional circumstances test."  *Bethlehem Contracting Co.*, 800 F.2d at 327 (citing *Moses*, 460 U.S. at 27–28).  "[A] stay is as much a refusal to exercise federal jurisdiction as a dismissal.  When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  *Moses*, 460 U.S. at 28; *see also Abe v. N.Y. Univ.*, No. 14 Civ. 9323, 2016 WL 1275661 at *10 (S.D.N.Y. Mar. 30, 2016) ("[T]he *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate").

- *The Cincinnati Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-4462-GHW, Dkt. No. 49

- *USAA Casualty Insurance Co. v. Rael Maintenance Corp.*, No. 1:23-cv-5193-GHW, Dkt. No. 52

- *Travelers Excess, & Surplus Lines Co. a/s/o Park Row 23 Owners LLC v. Rael Maintenance Corp.*, No. 1:23-cv-8717-GHW, Dkt. No. 47.

The Clerk of Court is further directed to terminate all pending motions and close the case in the above-listed cases (Nos. 1:23-cv-4433-GHW, 1:23-cv-4462-GHW, 1:23-cv-5193-GHW, 1:23-cv-8717-GHW).

SO ORDERED.

Dated:  April 24, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge